GRAND AVENUE RAILWAY COMPANY v. CITIZENS' RAILWAY COMPANY, Appellant.

In Banc, March 21, 1889.

1. **Street Railway:** ORDINANCE: PURSUANT TO SPECIAL CHARTER. Ordinances passed in obedience to a charter, which has been adopted by direct grant of the Constitution and framed and enacted by the legislature, are binding upon all persons who come within the scope of their operation, unless they conflict with and are not in harmony with the Constitution and general laws of the State. So that, where the Constitution provides that circuit courts shall have "such concurrent jurisdiction with and appellate jurisdiction from inferior tribunals as may be *provided by law*," and such city has enacted an

ordinance that secures to the parties, where one railroad company within such city is attempting to run its cars on the tracks of another, a right to have the award of the commissioners for compensation therefor reviewed in the circuit court, the circuit court has jurisdiction to hear the cause.

2. ————: FRANCHISE: EXCLUSIVE RIGHT. No street railway has the exclusive right to the use, for its own private gain, of a street over which it has received a franchise from the city to construct a street railway.

3. ————: USE OF ANOTHER COMPANY'S TRACKS: DAMAGES: LOSS OF TRADE. In estimating the damages to which a railroad company is entitled because of the fact that another company has, in pursuance to an ordinance, been given the right to run its cars over such company's tracks, the commissioners can not take into consideration its loss of passengers by reason of the division of its patronage.

4. ————: ————: ————: DELAYS: INCONVENIENCES. Nor can they take into consideration in assessing "just compensation," the delays, inconveniences or jolts arising from making the connections from one track to the other.

5. ————: ————: ————: CROSSING. The right of crossing in a public highway is an absolute one, and can not be made the basis of an allowance for damages.

6. ————: ————: ————: ANNUAL INTEREST CHARGE. It is the value of an electric road at the institution of the proceeding, not its cost when it was a cable road, that must be the basis of the computation of annual interest, or rent, that one electric street railway company is to pay another for the use of its tracks.

7. ————: ————: ————: FRANCHISE. It is not proper to charge the company given the right to run its cars on another's tracks, with a portion of the special franchise tax paid by such company for the privilege of constructing and operating its road.

8. ————: ————: ————: JUST COMPENSAEION: MEASURE OF. The decree ascertained the value of the trackage occupied, and required the company desiring to use such tracks to pay interest at six per cent on one-half the value thus found; also required it to pay one-half the annual property taxes, half the annual costs of repairs and maintenance of the tracks, and paving; one-half the cost of sanding, watering, cleaning and salting the tracks; one-half the cost of renewing said tracks, and granite and wood paving, whenever said renewals shall be required; to give bond that it would pay the other road its part of these costs; it also required it to construct the switches and connections with the tracks where the roads intersect, and to maintain the same, and keep and pay switchmen at each end, employed at all

hours when trains were running; and forbade it to hinder or delay the other company in the use of its tracks, and whenever the cars of both approached the intersections the other company was to have the right of way. *Held,* that these items covered all the grounds upon which compensation could be lawfully allowed.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

AFFIRMED.

SMITH P. GALT for appellant.

(1) The circuit court had no jurisdiction of this cause. The city of St. Louis can not confer appellate jurisdiction on the circuit court.   Constitution, art. VI.   (2)   The court erred as to the subject-matter of its award, and in the amounts of its award.   (a)   The court ought to have allowed defendant the damages caused to its cars, by the twenty-four cuts plaintiff made in defendant's tracks, over which defendant's cars must pass on every trip, injuring the wheels and motors, which damages amount to $300 per year.   (b) The court ought to have allowed defendant the damages caused by stopping and delaying defendant's cars, the loss to defendant therefrom, being $300 per year.   (c)   The court ought to have allowed defendant for the loss to it by the wearing out of its rails, at least.   (d)   The court should have allowed the defendant, on account of the special tax paid annually to the city of St. Louis, for the privilege of maintaining its tracks on the public streets, the whole amount paid the city, being $10,000 per year.   The proportion that the Grand Avenue tracks should bear of that amount is $1,841.66, plaintiff should pay one-half thereof, $920.83. (e)   The court erred in allowing defendant interest to be paid by the plaintiff, on the basis of a value of its tracks, at only $35,000.   The cost of that track to the defendant, and as used by the defendant while the plaintiff is using

it, was and is $140,616. That track built now in the same manner in which it now exists and is operated, would cost about $135,000. The court based its valuation on what would be the cost of a new track laid down in the first instance on some other street, without such solid concrete foundation, and wooden ties instead of iron yokes. (f) The court erred in making no allowance to defendant on account of the loss of passenger traffic, which at the time of the hearing below amounted by actual experience, during the two months the plaintiff had been running on these tracks, in a loss to defendant of $27.20 per day. (g) The court erred in the order made in its decree as to which party, plaintiff or defendant, shall employ and control the switchman, and as to when defendant shall maintain, repair and renew the tracks.

F. N. JUDSON for respondent.

(1) The court properly took the value of the tracks proposed to be used as the basis of compensation. First— It is value, and not cost, which is the basis of compensation. See Lewis on Eminent Domain, sections 477 and 478. The capital invested in the abandoned conduct was as completely lost to appellant as if it had been destroyed by the elements. Second—The contention that the conduit construction of the abandoned cable enhanced the value of the tracks, had no support in the evidence. (2) The decree contained all the elements of just compensation. The language of the ordinance did not authorize any increase of the compensation above just compensation based upon the ascertained value of the tracks, there being no evidence of any injury to an exclusive right for which damages could be awarded. Railroad v. Railroad, 105 Mo. 562; Railroad v. Railroad, 132 Mo. 34; Railroad v. Railroad, 111 Mo. 666; Railroad v. Railroad, 118 Mass. 290. There could be no allowance for incidental "inconvenience," "interruptions" and ."joltings," resulting from connections with and crossings of appellant's tracks.

The right of crossing is a constitutional right. Article VII, sections 13, 14 and 20, Constitution; Railroad v. Railroad, 97 Mo. 680; Railroad v. Railroad, 97 Mo. 457; Railroad v. Railroad, 118 Mo. 599; Railroad v. Railroad, 132 Mo. 43; Lewis on Em. Dom., sec. 268; Booth on Street Railways, sec. 114. (3) *A fortiori* there was no basis for a claim for loss of business through competition on account of the improved facilities afforded the public, as appellant's franchise was admittedly not an exclusive one. Railroad v. Railroad, 87 Ky. 221; Railroad v. Railroad, 36 Ohio St. 239; 6 Am. and Eng. Ency. of Law, pp. 545 and 579; Railroad v. Railroad, 118 Mass. 290; Railroad v. Railroad, 105 Mo. 562; Railroad 132 Mo. 34. (4) The circuit court, in reviewing the report of the commissioners, was vested with full plentitude of chancery powers. The trial in the circuit court is *de novo.* Sedalia v. Railroad, 17 Mo. App. 110; Worcester v. Railroad, 57 Wis. 313; Phifer v. Railroad, 17 N. C. 433; Railroad v. Railroad, 105 Mo. 566; Railroad v. Railroad, 110 Mo.. 511; Railroad v. Railroad, 118 Mo. 599.

GANTT, C. J.—This is a proceeding by the plaintiff company, a street railway corporation of the city of St. Louis, to determine the compensation it must pay the defendant company under ordinance number 12,652 of said city, for the use of defendant's tracks from Easton Avenue to Natural Bridge road. This proceeding is similar to that had in Grand Avenue Railway Co. v. People's Railway Co., 132 Mo. 34, and in Grand Avenue Railway Co. v. Lindell Railway Co., decided at this term, and reported at page 637 of this volume.

As the charter provision and ordinance are set forth in full in both of said cases it is deemed unnecessary to reproduce them again in this decision.

In this, as in those cases, it was conceded that the defendant company is bound by the provisions of the city

charter and ordinance number 12,652, by reason of its acceptance of the conditions of its franchise in ordinance number 11,528.

Prior to the commencement of these proceedings the Citizen's Railway Company, the defendant herein, had converted its horse railroad into a cable road with an underground conduit extending throughout its length under both tracks. In 1893 this company changed its entire system from a cable to an electric line and the operation of the road as a cable railway was permanently abandoned. The rope was taken out of the conduit and cable pits filled up and made solid, and the road at the time of the institution of these proceedings was operated by an overhead electric trolley. By subsequent ordinance number 17,047, the Grand Avenue Railway Company was authorized to construct a line on Grand Avenue, save where the said avenue was occupied by the Lindell company's and the Peoples' and Citizens' tracks. and use their tracks on the portion occupied by them. Plaintiff thus required to use the Citizens' tracks, and not being able to agree on the compensation, commissioners were appointed under ordinance number 12,652. A majority of the commission reported in favor of an annual rental of $15,485.90, payable in quarterly instalments.

This sum included the estimated cost of maintenance and renewal of tracks and the payment of switchmen, which the Citizens' road was to employ. The report also required the Citizens' company to make the necessary connections with material to be furnished by the Grand Avenue company, the latter paying for the work. To this report both sides filed exceptions and each perfected its appeal to the circuit court—the Grand Avenue because the amount was excessive; the Citizens' because too small, in that, among other things the commission allowed it no damages for its loss of business by reason of the competition in a field it had occupied as a pioneer, and for the reason that the commission did not require the Grand Avenue company to pay its

proportion of the license or franchise tax imposed upon the Citizens' by the city for the privilege of constructing and operating its road. Both sides prayed the circuit court to review the award and make such orders as justice and right might require. The circuit court materially modified and changed the finding of the commission.

The errors assigned will be noted and discussed in connection with the evidence.

I.   In this, as in Grand Avenue Railway Co. v. Lindell Railway Co., *supra,* it is urged that the circuit court was without jurisdiction to hear the cause, for the reason that the city had no power to confer upon the circuit court jurisdiction to hear the case.   In the circuit court no objection was made to the jurisdiction of the court, either at the hearing or in the motions for new trial or in arrest.

While jurisdiction of the subject-matter may be raised for the first time in this court, it is worthy of note that learned counsel did not consider the circuit court without jurisdiction until the cause reached this court.   As said in the Lindell case, that question was decided adversely to this contention in the Union Depot Railroad Co. v. Southern. Electric Railway Co., 105 Mo. 562.   While it is insisted that the expression "provided by law" construed in the light of the various other provisions of the Constitution, using that phrase or the like phrase "by laws," refers generally to acts of the General Assembly, it is conceded by counsel, as we think it must be, that a charter adopted by direct grant of the Constitution itself, has all the efficacy of a legislative enactment, and that if such a power be given to a city by charter framed and enacted by the legislature itself, ordinances passed in obedience to such charters, are laws of the State within such municipality, and are binding upon all persons who come within the scope of their operation, unless they conflict with, and are not in harmony with the Constitution and general laws of the State, and as in this ordinance

the parties are secured a final hearing in the circuit court, a court with full jurisdiction to hear and determine all the questions involved, no attempt to disregard the general laws or policy of the State can be discerned, but rather a determination to conform thereto. [St. Louis v. Foster, 52 Mo. 513; Taylor v. Carondelet, 22 Mo. 105; St. Louis v.Boffinger, 19 Mo. 13; Jackson v. Grand Avenue Railway Co., 118 Mo. loc. cit. 218; Kansas City v. Marsh Oil Co., 140 Mo. 458; Grand Avenue Railway Co. v. Lindell Railway Co., 148 Mo. 637.] We adhere to the ruling in Union Depot Ry. Co. v. Southern Electric Ry. Co., 105 Mo. 562.

II. Section 3 of ordinance number 12,562 requires the commissioners to view the tracks proposed to be used by the company making the application and to hear the proofs and allegations of the parties as to the value of said tracks and as to the compensation to be paid and such damages as the commissioners may deem just.

Upon this section defendant predicates its claim for damages incurred by the loss of passengers by reason of the division of its patronage.

This exception must be determined by the nature of defendant's franchise. If it had an exclusive right to occupy this street with its tracks, it is obvious that it would suffer much damage by pemitting a rival company, not only, to carry passengers on that street, but to use defendant's tracks to do so. If defendant's right were an exclusive one, the question would not admit of discussion, but the contrary is absolutely true. When defendant received its franchise to construct its road on Grand Avenue and carry passengers thereon for hire, it was not an exclusive right and under our laws could not be. The city had no power to confer upon any corporation the exclusive use of this street for its own private gain. [St. Louis Transfer Co. v. Railroad, 111 Mo. 666; Lockwood v. Railroad, 122 Mo. 86; Sherlock v. Railroad, 142 Mo. 172.]

Streets are dedicated to public use and the trust is confided in the municipality to preserve them for that purpose only. It necessarily follows that it would have been competent for the city to have granted a rival corporation the right to lay its tracks also on Grand Avenue, and no action would have accrued to the defendant for the diversion of its business by reason of this competition. It would have been in such case *damnum absque injuria.*

But in addition to this general principle, defendant in this case accepted its franchise under a contract to permit any other road to use its tracks. Excluding then as we must, the idea of compensation for loss of profits from competition because defendant's rights are not exclusive, it follows that in the meaning of the charter and the ordinance the compensation which the commissioners could allow was limited to just compensation according to legal principles and not such as the commissioners might deem fair in contravention of the law. The ordinance is subject to and can not exceed the charter which limits the damages to just compensation, from which the law excludes the diminution of profits by reason of competition, as well also the delays, inconveniences, and jolts, arising from permitting one road to cross another, as the right of crossing in a public highway is an absolute one, and can not be made the basis for an allowance of damages.

The decree proceeding as above indicated first ascertained the value of the trackage occupied, and required plaintiff to pay interest at six per cent on one half the value thus found. It also required defendant to pay one half of the annual taxes, half of the annual cost of repairs and maintenance of the tracks, and paving on defendant's own estimate; one half of the cost of sanding, watering, cleaning and salting the tracks and one half of the cost of renewing said tracks and granite and wood paving whenever said renewals shall be required, and requiring plaintiff to give

a bond in the sum of $15,000 conditioned that it would pay defendant its part of the cost of said renewals as provided in the decree.

The decree found that plaintiff company had at its own expense constructed the switches and connections with the tracks of defendant where said roads intersected. It was further ordered and required to maintain the same and keep switchmen at each end employed at all hours when trains were running and pay the same.

Plaintiff was forbidden to hinder or delay defendant in the use of its tracks and whenever the cars of both companies approached the intersection defendant was given the right of way.

These items covered all the grounds upon which compensation could be lawfully allowed.

The contention of counsel for defendant that the basis of the annual interest should be not the value when this proceeding was instituted, but the cost of building the cable road, can not be sustained. It is the value, not the cost, which must form the basis of the compensation.

It is sought to justify the action of the commissioners in making the cost and not the then value of the road, the basis for their annual rental by claiming that the decision in Grand Avenue Railway Co. v. Peoples' Railway Co., 132 Mo. 34, announces such a rule. That is a misconception of that case. The value, not the cost, was the basis in that case. The conditions, however, are entirely different in this case from that. Then the People's was a cable road, being operated as such, and we allowed the value of such a road to be the foundation for the rental because the Grand Avenue was seeking to use it, but the evidence here conclusively shows that the cable had been abandoned and the conduit filled up and packed solid.

It moreover appeared that this substructure added nothing whatever to the value of the road as an electric road. Mr.

Baumhoff, defendant's witness, testified that the yokes were a disadvantage instead of an advantage, that ties were preferable. It would be utterably inexcusable to charge plaintiff with the cost of an abandoned enterprise, as defendant seeks to do in this case.

The evidence shows beyond all doubt that $40,000 is the full cost of an entirely new electric road. This road had been operated as an electric road for two years when this case was instituted and the court found the value to be $35,000 and its finding is fully sustained by the testimony.

No error was committed in refusing to charge plaintiff with a portion of the special franchise tax paid by defendant for the privilege of constructing and operating its road. The right to use a part of defendant's tracks did not make it a joint owner of its franchise. Plaintiff doubtless pays its own special or franchise tax for the privilege of operating its own road.

The decree requiring plaintiff to pay half of the annual property tax, went as far as the right and equity of the case demanded.

We have already held in the Lindell case, that as the duty of making and maintaining the connections are cast upon plaintiff and the obligation of paying the switchmen to insure those connections is also devolved upon plaintiff, the court very properly allowed and required it to select and employ the switchmen for whose conduct in the premises it must be responsible. Having considered all the errors assigned for defendant, we find no reversible error in the decree and it is accordingly affirmed.

SHERWOOD, BURGESS, ROBINSON, BRACE and MARSHALL, JJ., concur; VALLIANT, J., not having heard the cause, takes no part in the decision.