## ST. LOUIS AND MERAMEC RIVER RAILROAD COMPANY v. CITY OF KIRKWOOD, Appellant.

In Banc, December 18, 1900.

1. **Street Railway: RIGHT TO ENTER CITY.** A city can altogether deny a street railway company, properly chartered by the State, the right to operate its road on its street or within its corporate limits, and without such consent the road can not force itself into the city.

2. ———: ———: **NUISANCE.** A street railway laid in streets without authority is a nuisance, and so is the operation of a railroad of any kind in a city without authority of law.

3. ———: ———: **CARRYING FREIGHT.** A street railway corporation which has been chartered to carry "passengers and property," can not enforce its charter right to carry freight, mail or express within a city which has consented to its carrying passengers only. The city had a right to dictate the terms upon which the road should be operated, and the giving of its consent to carry passengers, and thereby requiring the company to waive the performance of a part of its

charter powers, to-wit, the carrying of freight, does not invalidate a subsequent ordinance that no street railway company should carry freight, mail or express within the city. A right to withhold the whole, implies the right to withhold a part. And the city can punish a violation of such ordinance by reasonable fines and imprisonment.

·4. ————: ————: REASONABLE ORDINANCE. It is entirely reasonable for the city authorities to grant to a street railway company the privilege of occupying its streets as a railway for carrying passengers, which would cause little or no inconvenience to the traveling public, and at the same time deny to it the privilege of operating freight cars which might block its highways and monopolize its streets.

5. ————: CHARTER: CONSTRUED IN FAVOR OF PUBLIC. Where a city francise to a street railway is simply "for the transportation of passengers," the grant must be construed in favor of the public and against the railroad, and as this enumeration excludes the transportation of freight, it is held that the franchise did not include the right to carry freight.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED AND REMANDED *(with directions).*

*Geo. L. Edwards* for appellant.

(1) The defendant was authorized to grant or refuse a franchise to plaintiff "to construct, maintain and operate an electric railroad . . . . . . . on, along, over and upon" its streets. This right carried with it the power to prescribe the terms and conditions of such franchise. "The power conferred upon a city to give or withhold its consent to the construction of a railroad within its limits is not limited to saying 'yes' or 'no.' In giving such consent the city may attach conditions." Constitution, sec. 20, art. 12; R. S.

St. L. & M. Riv. Ry. Co. v. Kirkwood.

1889, sec. 2543, now sec. 1035, R. S. 1899; Railroad v. Railroad, 105 Mo. 571; 2 Dillon on Municipal Corporations (4 Ed. 1890), sec. 706; Railroad v. Railroad, 148 Mo. 637; Railroad v. Railroad, 148 Mo. 665; Railroad v. Springfield, 85 Mo. 674; Fink v. St. Louis, 71 Mo. 52; Railroad v. Leavenworth, 1 Dillon, C. C. R. 393; Railroad v. Baltimore, 21 Md. 93; 3 Elliot on Railroads, sec. 1081. (2) The franchise granted to plaintiff by the defendant "to construct, maintain and operate an electric railroad for the transportation of passengers on, along, over and upon" certain of its streets does not authorize the plaintiff to operate over its said road a mail and freight car. St. Louis v. Railroad, 13 Mo. App. 531; Carroll v. Campbell, 108 Mo. 559; State ex rel. v. Payne, 129 Mo. 468; State ex rel. v. Murphy, 130 Mo. 24; Springfield v. Smith, 138 Mo. 655; McCartney v. Railroad, 112 Ill. 611; Booth on Law of Street Railways, sec. 6, p. 7, also sec. 33, p. 40; Black on Interpretation of Law, pp. 319, 146; 4 Thompson on Private Corporations, sec. 5345, and vol. 7, sec. 8298; 3 Elliott on Railroads, sec. 1080. (3) Ordinance number 31 is valid and a proper exercise of the corporate authority of defendant. "Cities of fourth class shall have and exercise exclusive control over all streets, alleys, avenues and public highways within the limits of such cities." Laws 1895, sec. 85, p. 84, now sec. 5979, R. S. 1899. "The mayor and board of aldermen shall have power and authority to regulate and to license . . . . . . street railroad cars." . . . . . . . Laws 1895, p. 84 and sec. 84, now sec. 5978, R. S. 1899; Laws 1895, p. 90, sec. 106, now sec. 6000, R. S. 1899.

*Dawson & Garvin* for respondent.

A railroad company can not be incorporated under article

Vol. 159 Mo—16

2, chapter 42, Revised Statutes 1889, except "for the pur-
pose of constructing, maintaining and operating a railroad
for public use in the conveyance of persons and property."
R. S. 1899, sec. 1034, being R. S. 1889, sec. 2542. All
railroad corporations "shall be subject to all the duties, lia-
bilities and provisions not inconsistent with their charter
herein contained." R. S. 1889, sec. 2665; R. S. 1889, sec.
2666. They are required to make arrangements and provide
such facilities as will enable express companies to carry on
and transact their express business. R. S. 1889, sec. 2660.
And are authorized to furnish proper facilities for carrying
and distributing United States mail, providing such use shall
not impede or delay the transportation of passengers over such
road. Laws 1891, p. 97. The Legislature may not grant the
right to construct and operate a railroad within any city,
town, village, or on any public highway, without first acquir-
ing the consent of the local authorities having control of the
streets or highways proposed to be occupied by such railroad.
Constitution, art. 12, sec. 20. But a corporation can not
bind itself to exercise only part of the franchise committed
to it by the State for public purposes, or make a valid con-
tract not to exercise part of the franchise committed to it by
the State for public purposes. St. Louis v. Gas Company, 5
Mo. App. 529, 70 Mo. 69; 1 Dillon Municipal Corporations
(4 Ed.), sec. 443, note 1; Booth on Street Railways (1892),
sec. 29, p. 36; Wiggins Ferry Co. v. Railroad, 128 Mo. 247.
And no municipal corporation can, under general or special
charter, pass ordinances regulating subjects, matters and
things upon which there is a general law of the State, except
in conformity with the state law upon the same subject.
R. S. 1889, sec. 1902; 3 Elliott on Railroads, sec. 1076; State
v. Clark, 54 Mo. 36.

GANTT, C. J.—This is a suit by the plaintiff to enjoin

the city of Kirkwood and its officers from harassing it by a multiplicity of prosecutions for the violation of an ordinance of said city, known as "ordinance number 31," which prohibits any corporation from running or operating any street railroad car or cars upon or over any route in the city of Kirkwood not authorized by the franchise granted to said corporation by the town or city of Kirkwood and making a violation thereof a misdemeanor punishable by a fine not less than $95, nor more than $100, or by imprisonment in the city prison for not less than two months nor more than three months or by both such fine and imprisonment.    The defendant city was duly served and answered, and upon trial in the circuit court of St. Louis county, a perpetual injunction was granted, from which judgment the city has appealed to this court.

The appeal is brought to this court because the constitutionality of the ordinance mentioned is challenged.

Plaintiff's petition charges that it is a railroad corporation duly organized and existing under and by virtue of the provisions of article. 2, chapter 42, of the Revised Statutes of Missouri of 1889, for the purpose of constructing, maintaining and operating a railroad in the city and county of St. Louis for public use in the conveyance of persons and property from a point within the said city, thence in a general southwestwardly direction through, or near the village and towns of Old Orchard, Kirkwood, etc.; that it has constructed, and is now, and for some time past, has been operating its said railroad; that a portion of its line of railroad lies within the limits of the city of Kirkwood; that it is authorized to convey persons and property over its said railroad and to receive compensation therefor; that before constructing its said railroad within limits of the said city of Kirkwood it obtained the assent of said town to said construction, ex-

pressed by an ordinance of said town, duly enacted May 21, 1897, and numbered 238, and thereafter amended by other ordinances of said city; that neither of said ordinances contain any provisions against the carrying of mails, or express matter, or of light freights, or of freights of any character; that plaintiff has never operated its said railroad within the city of Kirkwood for any purpose other or different from the purpose for which it has operated its entire line of railroad, and has never transported on its cars any other or different kind of property than that transported by it throughout the entire length of its railroad; that its said railroad is a post route and it is engaged in carrying the United States mails thereon, and for some time past has been from the city of St. Louis and to and from the town of Kirkwood; that its said railroad is a public highway and plaintiff a common carrier; that at the time of the enactment of the ordinances assenting to the construction of plaintiff's railroad the town of Kirkwood was organized under special acts of the Legislature of the State of Missouri in the petition referred to; that subsequently and in 1899, said town became incorporated under the general laws of Missouri as a city of the fourth class; that thereafter and on, to-wit, the twentieth day of November, 1899, the said defendant, arbitrarily and without any lawful authority so to do, and with the intent to harass and injure the plaintiff, and to interfere with the plaintiff in the lawful conduct of its business as a common carrier, and to deprive the plaintiff of the exercise and enjoyment of the franchise granted to it as aforesaid, passed a certain resolution, in said petition set out, requiring the plaintiff to cease running and operating over its road in the city of Kirkwood, cars carrying freight, express, baggage or mail, a copy of which said resolution was delivered to the plaintiff; that thereafter, for the purposes aforesaid, and on the eleventh

day of December, 1899, the said defendant enacted ordinance number 31, in said petition set out, whereby it is provided that:

"No corporation, company, copartnership, person or persons shall run, operate, use, or drive, or cause to be run, operated, used or driven, in the city of Kirkwood, Missouri, any street railroad car or cars, or other kind of railroad car or cars upon or over any route, or for any purpose or use whatever, not authorized by the franchise granted to said corporation, company, copartnership, person or persons by the town or city of Kirkwood, Missouri."

(Said ordinance provides a penalty for doing the prohibited acts).

That a copy of this ordinance was also delivered to defendant; that thereafter, and on the nineteenth and twenty-second days of December, 1899, the said defendant, still persevering in its said purpose aforesaid, caused to be filed with its police judge complaints against one Thomas M. Jenkins, the general manager of plaintiff, for violating said ordinance, upon which warrants were issued and said Thomas M. Jenkins arrested and brought before the police judge of defendant to answer to said complaints, copies of which said complaints and warrants are set out in the petition; that, though requested, defendant refused to forego further prosecution of plaintiff's said general manager for violating said ordinance number 31 until the validity of the same might be tested in the courts, but threatened to continue the same.

Plaintiff's petition then proceeds to charge that for a great number of reasons therein enumerated, said ordinance number 31 is null and void and of no effect and concludes as follows:

"That if the defendant is permitted to continue the prosecutions already commenced against the plaintiff, as

aforesaid, and is permitted to carry out its threats to institute similar prosecutions against plaintiff from time to time, and from day to day, and is permitted to prevent plaintiff from the performance of its public duties, as a common carrier, and to prevent the plaintiff from the exercise and enjoyment of its franchises as aforesaid it will occasion the plaintiff great and irreparable damage, for which the plaintiff has no adequate remedy at law."

Wherefore the plaintiff prays the court to decree said ordinance number 31 "illegal, null and void as against the plaintiff," and in the meantime to enjoin the defendant, its officers, and agents and servants from further prosecuting the actions already commenced against plaintiff as aforesaid, and from instituting or causing to be instituted any further actions against plaintiff, its officers, agents, or servants, for alleged violations of said ordinance number 31, or in any way interfering with the plaintiff in the discharge of its duties as a common carrier or in the exercise or enjoyment of its said franchise aforesaid and for such further and other relief as to the court shall seem meet.

In pursuance to the prayer of plaintiff's petition the judge of the circuit court of St. Louis county on the twenty-sixth day of December, 1899, in vacation of said court, and at chambers, issued a temporary injunction or restraining order against defendant, its officers, agents and servants, prohibiting them from doing the acts complained of.

The answer of defendant to plaintiff's petition is a general denial. After filing said answer, defendant filed a motion to dissolve said temporary injunction as aforesaid issued against it, assigning as reasons therefor, that plaintiff's petition does not state facts sufficient to constitute a cause of action or which warrant any equitable or other relief, and because the facts stated in plaintiff's petition are untrue.

The facts developed by the evidence in this case are few and in the main uncontradicted. They are substantially as follows:

On the thirty-first day of May, 1895, plaintiff was duly organized "under and by virtue of the provisions of article 2, chapter 42, of the Revised Statutes of Missouri of 1889, for the purpose of constructing, maintaining and operating a standard gauge railroad, for public use in the conveyance of persons and property." On the twenty-first day of May, 1897, the defendant, by ordinance duly enacted, granted to the plaintiff, its successors and assigns, a franchise "to construct, maintain and operate an electric railroad for the transportation of passengers, on, along, over and upon" certain streets of defendant. "This franchise to continue in full force and effect for a period of fifty years."

(This ordinance was thereafter twice amended during the year 1897, but these amendments are not material to the questions here presented for decision.)

After obtaining this franchise the plaintiff constructed along, across, over and upon the streets of defendants, by the franchise authorized, an electric railroad. For a period of some six months or more after the construction of its said railroad the plaintiff operated thereon only cars conveying passengers. Plaintiff then commenced to run and operate thereon a mail and freight car which carries no passengers but is wholly given up to a traffic in mail, express, baggage and freight. This car is labeled "United States Mail Car," but is in fact engaged in the business aforesaid. The exclusive privilege of shipping freight, express or baggage on this car is contracted to The Walton-Knost Express Company for a number of years at a stipulated sum per annum. Plaintiff makes two trips per day with this car over its road, stopping to load and unload the same at the corner of Adams and Clay

avenues within the limits of the defendant; the time con-
sumed in loading and unloading this car is from ten to forty
minutes and at times it stands on the track when not thus
engaged.   While so engaged in loading and unloading, or
standing on the track, this car obstructs the cross walks on
Adams and Clay avenues, and withdraws for the time the
one half of these streets at this point from public use, and
when passenger cars pass it going east and south at this point
these streets are entirely withdrawn from public use by the
cars of plaintiff.   The defendant objected to this use of its
streets and plaintiff's road, and on the twentieth day of
November, 1899, by resolution called upon the plaintiff "to
cease within ten days from the twenty-second day of Novem-
ber, A. D. 1899, the running and operating over its road in
this city, cars carrying freight, express, baggage or mail."   No
heed was given this remonstrance of defendant by the plain-
tiff, and to prevent it or any other railroad from operating its
road for a use or purpose not authorized by its franchise, and
using the streets of defendant for a purpose not authorized
by it, the defendant enacted ordinance number 31, whereby
it is provided:

"Sec. 1.   No corporation, company, copartnership, per-
son or persons shall run, operate, use or drive, cause to be
run, operated, used or driven in the city of Kirkwood, Mis-
souri, any street railroad car or cars, or other kind of rail-
road car or cars, upon or over any route, or for any purpose
or use whatever, not authorized by the franchise granted to
said corporation, company, copartnership, person or persons
by the town of Kirkwood, Missouri.   And violations of the
provisions of this section shall be deemed a misdemeanor, and
upon conviction, the offender shall be punished by a fine of
not less than ninety-five dollars, nor more than one hundred
dollars, or by imprisonment in the city prison for not less

than two months nor more than three months or by both such fine and imprisonment.

"Sec. 2.    Any officer of any street railway company or other railway company, or person managing or operating the same, who shall run or operate the same or cause the same to be run or operated in a manner or for any use or purpose whatever prohibited by section 1 of this ordinance shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than ninety-five dollars nor more than one hundred dollars, or by imprisonment in the city prison for not less than two months nor more than three months or by both such fine and imprisonment."

On the fourteenth day of December, 1899, the defendant caused a copy of this ordinance to be delivered to the plaintiff.    Its provisions were not minded by the plaintiff, and on the nineteenth and twenty-second days of December, 1899, to enforce obedience thereto the defendant caused to be commenced against the general manager of the plaintiff, suits numbered 7601 and 7602, the files in which cases were offered in evidence by plaintiff and are copied into the record. Whereupon, on the twenty-sixth day of December, 1899, plaintiff commenced this suit against defendant.

A correct understanding of the issues involved necessitates a statement of certain provisions of the Constitution of Missouri and of our statutes in force when the plaintiff obtained permission to lay its tracks and operate its railroad in the streets of Kirkwood.

Section 20 of article 12 of the Constitution of Missouri, 1875, provides:    "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be

occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained."

Section 2543 of the Revised Statutes of Missouri, 1889, article 2, chapter 42, provides: "Nothing herein contained shall be construed to authorize the erection of any, bridge or other obstruction across or over any stream navigated by steamboats, at the place where any bridge or other obstruction may be proposed to be placed, so. as to prevent the navigation of such stream, nor to authorize the construction of any railroad not already located in, upon or across any street in a city or road of any county, without the assent of the corporate authorities of said city, or the county court of said county."

The plaintiff railroad company was organized under the provisions of article 2, chapter 42, Revised Statutes 1889, of which section 2543 constitutes a part.

On the twentieth of May, 1897, the plaintiff applied to the board of aldermen of Kirkwood to grant it a franchise to construct, maintain and operate an electric railroad upon and across certain streets of said town.

Kirkwood was organized as a town by special act of the Legislature approved February 20, 1865. By said act it was empowered "to open, establish, widen, extend, contract, abolish, build and repair streets, avenues, alleys, lanes, public squares, drains and sewers, and keep the same clear and in order" and "to regulate, grade, pave and improve the streets in said town and to pass all ordinances to carry into effect the object of said act and the powers therein granted." Said charter was amended by another special act approved February 27, 1869, containing the above powers and some others not necessary now to mention. In 1899 Kirkwood duly accepted the provisions of the act entitled "Cities of the

Fourth Class," and was at the commencement of this suit a city of the fourth class with the powers conferred by the laws of this State upon such cities.

Sections 1 and 14 of the franchise granted plaintiff by the town of Kirkwood through its board of aldermen on the twenty-first of May, 1897, were as follows:

"Sec. 1. Authority is hereby given to the St. Louis and Meramec River Railroad Company, its successors and assigns, to construct, maintain, and operate an electric railroad for the transportation of passengers on, along and upon the following route within the town of Kirkwood, to-wit," (naming the streets, etc.).

"Sec. 14. It is expressly understood by the acceptance of the provisions of this ordinance by the St. Louis and Meramec River Railroad Company, the railroad company agrees and binds itself, its successors and assigns, to conform to all general ordinances now existing or hereafter to be enacted by the town of Kirkwood respecting and governing street railroads."

The contention of the city of Kirkwood under the foregoing statement of facts is that under the Constitution and statutes quoted, the town, now city, of Kirkwood, had the right to consent or refuse to permit the plaintiff to construct, maintain and operate its railroad along the streets of said town, and if it consented, it had the right to prescribe the terms and conditions upon which it would permit said railroad to occupy its streets, and having permitted plaintiff to occupy its streets solely for the purpose of transporting passengers, plaintiff has no right to use its streets for the carriage of freight. Whereas, plaintiff insists that while it is true, that under our laws it had no right to construct and maintain its railroad in a city, town or village *without first acquiring the consent of the authorities* of said city, the plaintiff railroad company

could not bind itself to exercise only a part of the powers committed to it by the State, or make a valid contract not to exercise part of the franchise granted to it for the public use, and the city or town could not impose the condition that it shall exercise only a part of its powers, and such a contract would be in plain violation of the law by both the town and the railroad and *ultra vires* their respective corporate powers, and opposed to public policy.

It would be difficult to conceive of a more positive and unequivocal veto than that conferred upon the cities, towns and villages of this State by section 20 of article 12 of the Constitution, and section 2543, *supra,* to prevent the construction and operation of railroads upon their streets and highways, without their consent. When such power is given to cities and towns it is not limited to a mere "yes" or "no," but they may impose such conditions upon their consent as they see fit. [Grand Ave. Ry. v. Lindell Ry., 148 Mo. 637; Grand Ave. Ry. v. Citizens Ry., 148 Mo. 665; Union Depot Ry. v. Southern Ry., 105 Mo. 571.]

Judge Elliott in his work on Railroads (volume 3, section 1081), says: "When a municipal corporation has the power to grant or refuse a railroad company the right to use its streets as it sees fit, or when its consent is required before any company can so use them, it has, as we think, the authority to prescribe the terms and conditions upon which the company shall have the right to construct and operate a railroad in its streets."

Judge Dillon in his work on Municipal Corporations, (volume 2, section 706), says: "Where, under the general statutes of a State, a railroad company was forbidden to construct and operate its road upon the streets of an incorporated city, 'without the assent of the corporate authorities,' these are not limited to a simple granting or denial of the right of way,

but may prescribe conditions on which they will give their assent, and if these are accepted by the railroad company, they are binding upon the parties."

It does not admit of doubt, in our opinion, that the city of Kirkwood could have altogether denied plaintiff the right to operate its road in said city, and it would have been utterly powerless to have forced its way into said city without its consent.

But, says the plaintiff, while we concede this, we insist that if it did give its consent and attached to it the condition that the company should only use the street as a carrier of passengers, the consent must stand, and the condition be rejected because unreasonable, as by so doing, it required the railroad company to waive the performance of a duty which its charter imposed upon it, viz., to carry freight.

As this city gave its consent solely on this condition, we think it very clear that if this condition was illegal then plaintiff is entirely without right in the streets of Kirkwood.

As was said by the Supreme Court of Pennsylvania, 159 Pa. St. 411, Alleghany City Railway: "The man who can give the whole, can give a part, or who can grant absolutely, can grant with a reservation of rent or other condition. He who can consent or refuse without reason does not make his consent or his refusal either better or worse by a good or bad reason." It is plain that the Constitution and the statute cited give the absolute power to the city, and it does not lie in the mouth of plaintiff who obtained this consent, to urge that the condition limiting it to a carriage of passengers is unreasonable.

If so unreasonable as to make it void, the consent obtained upon that consideration is also void. But we opine plaintiff does not desire this court to go to this extremity, nor is it necessary.

St. L. & M. Riv. Ry. Co. v. Kirkwood.

While plaintiff's charter gives it power to take and convey persons and property ". . . . and receive compensation therefor," there is no absolute rule of law which compels it to exercise all of its powers at all times and all places.    It was entirely reasonable for the town authorities to grant plaintiff the privilege of occupying its streets as a street railway for passengers, a system which would cause little or no inconvenience to the traveling public, but on the contrary, contribute to the comfort and convenience of its inhabitants, and at the same time refuse its consent to a railroad carrying freight which might block its highways and amount in many instances to a practical monopoly of the streets.    But we are dealing with a question of power, and we need not seek for reasons to justify the city council in refusing its consent to plaintiff to run freight trains on its streets.

It must be remembered that the State is not here complaining of non-user of its chartered powers, but it is the plaintiff which obtained this consent to use the streets by contracting to carry only passengers on its cars and thus to deny it itself merely one of its powers.

If the plaintiff is correct, that it now has the right to haul freight in the streets of Kirkwood, without its consent, then there is nothing to prevent its running freight trains of ten or twenty cars and stopping its trains where it pleases. We are clear that its acceptance of the condition imposed in the franchise granted it estops it from now grasping the benefits of that contract with one eager hand, while thrusting aside its burdens with the other.

We think the facts in evidence constituted plaintiff, so far as the city of Kirkwood is concerned, a street railway with the right to transport passengers only, and that, in operating mail and express cars, it exceeded the consent granted by the city, and thus made itself amenable to prose-

St. L. & M. Riv. Ry. Co. v. Kirkwood.

cution for violation of the ordinance punishing companies for operating cars in the streets for purposes not authorized by their franchises granted by the city. The ordinance was a valid exercise of the corporate authority of the city. [Laws 1895, sec. 85, p. 84, and sec. 106, p. 90, now secs. 5979 and 6000, Revised Statutes 1899.]

Ordinance No. 31 of Kirkwood is not void by reason of being so unreasonable that this court will declare it void. The exclusive control over its streets is given the city and after notifying plaintiff that it was violating its franchise and after plaintiff ignored its demand to conform to its privilege, the ordinance was justified. The city seeks not to oust plaintiff of its franchise, but requires it merely to conform to the conditions upon which it is permitted to use the streets.

A street railroad laid in the streets without authority is a nuisance, and so is the operation of a railroad of any kind in a city without authority of law. [Com. v. Railroad, 14 Gray, 93; Railroad v. Com., 101 Pa. St. 192.]

As the ordinance only made that an offense which is everywhere regarded as a nuisance, it was in no sense in excess of the city's power.

It may be well to add that as the franchise granted by the town of Kirkwood to plaintiff was simply "for the transportation of passengers," the grant must be construed in favor of the public and against the railroad company, and this enumeration excluded the transportation of freight. [Carroll v. Campbell, 109 Mo. 550; State ex rel. v. Murphy, 130 Mo. 24.]

It becomes unnecessary to discuss at length the various other propositions urged *arguendo* by the respective counsel. The decree of the circuit court granting a perpetual injunction against the city of Kirkwood and its officers restraining it from prosecuting plaintiff and its officers and servants for

the violation of the ordinance of said city, was erroneous, and said judgment is reversed and the cause is remanded with directions to dismiss the bill at the cost of plaintiff.

All concur, except *Burgess, J.,* absent.